# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMMA ST. GERMAIN,<br><br>    Plaintiff,<br><br>    v.<br><br>TEVA PHARMACEUTICALS USA, INC.;<br>TEVA WOMEN'S HEALTH, INC. d/b/a<br>TEVA WOMEN'S HEALTH, LLC; and<br>TEVA WOMEN'S HEALTH, LLC,<br><br>    Defendants. | Case No.:<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Emma St. Germain, by and through her counsel, files this Complaint against Defendants Teva Pharmaceuticals USA, Inc., Teva Women's Health, Inc., doing business as Teva Women's Health, LLC, and Teva Women's Health, LLC, (collectively hereinafter "Defendants"), both jointly and severally, as the companies and/or successors in interest to the companies that designed, developed, manufactured, tested, labeled, packaged, distributed, marketed and/or sold ParaGard Intrauterine medical device that was implanted into Plaintiff, and throughout the United States. Accordingly, Plaintiff alleges and states as follows:

## I.   INTRODUCTION

1.   This is an action for damages relating to the Defendants' design, manufacture, surveillance, sale, marketing, advertising, promotion, labeling, packaging, and distribution of ParaGard Intrauterine medical device (hereinafter "ParaGard IUD").

2.   ParaGard IUD is an intrauterine device, however, it is regulated as a drug. It is placed into the uterus to prevent conception.

3.     ParaGard IUD has a propensity to break at the arms upon explant resulting in serious injuries.

4.     Plaintiff used ParaGard IUD, and as a result of its use suffered injuries.

## II.   **GENERAL ALLEGATIONS**

5.     Plaintiff, Emma St. Germain ("Plaintiff"), by and through Plaintiff's attorneys, Ury & Moskow, LLC, brings this action for personal injuries suffered as a result of using the defective and dangerous ParaGard IUD.

6.     ParaGard IUD is prescribed to prevent conception, and at all times relevant hereto, were manufactured, designed, tested, packaged, labeled, marketed, advertised, promoted, distributed, and sold by Defendants.  On information and belief, Plaintiff used ParaGard IUD resulting in injuries.

## III.   **PARTIES**

7.     At all times relevant to this action, Plaintiff, was an individual, citizen and resident of the state of Connecticut.

8.     Plaintiff was implanted with ParaGard IUD on or about 2008. It was removed in part on or about 2018, resulting in injuries.

9.     Defendant Teva Pharmaceuticals USA, Inc. (hereinafter "Teva Pharmaceuticals" or "Teva USA") is a Delaware corporation with its principal place of business in Parsippany, New Jersey. At times relevant to this action, Teva USA designed, developed, manufactured and marketed the ParaGard IUD at issue. At times relevant to this action, Teva USA communicated with the United States Department of Health and Human Services, Food and Drug Administration (hereinafter "FDA") regarding the sale, use, and safety concerns related to ParaGard IUDs, which includes managing product recalls, investigating adverse events from ParaGard IUD users, and performing mandatory reporting to FDA regarding the ParaGard IUD.

10.     At times relevant to this action, Teva USA was involved in regulatory communications, and medical communications, including but not limited to communications with physicians, doctors, the FDA and other medical personnel, which led to activities giving rise to

failure to warn, negligence, gross negligence, common law fraud, negligent misrepresentation, breach of warranty, and a violation of consumer protection laws.

11.     Defendant Teva Women's Health, Inc., is a Delaware corporation with headquarters located at 425 Privet Rd., in Horsham, Pennsylvania and is and/or was a wholly owned subsidiary of Teva USA, and/or operated as a successor-in-interest to Duramed Pharmaceuticals, Inc., a division of Barr Pharmaceuticals, Inc., and/or assumed Duramed Pharmaceuticals, Inc., a division of Barr Pharmaceuticals, Inc., in a name change after its acquisition by Teva USA. Teva Women's Health, Inc. converted into Teva Women's Health, LLC in 2017 and continues to operate as Teva Women's Health, LLC. At times relevant to this action, Teva Women's Health designed, developed, manufactured and marketed ParaGard IUD at issue.

12.     Defendant Teva Women's Health, LLC is a Delaware limited liability company with headquarters located at 425 Privet Rd., in Horsham, Pennsylvania and is and/or was a wholly owned subsidiary of Defendants Teva Pharmaceuticals. Teva Women's Health's sole member is Barr Pharmaceuticals, LLC, formed under Delaware law with its principal place of business in New Jersey, and the sole member of Barr Pharmaceuticals, LLC, is Teva USA. For diversity purposes, TWH, LLC, is a citizen of Delaware and New Jersey. Teva Women's Health, LLC is the product of an entity conversion pursuant to Del. Code Ann. Tit. 8, 266.  Teva Women's Health, Inc., converted into Teva Women's Health, LLC and continues to operate as a limited liability company instead of an incorporation (Teva Women's Health, LLC formerly known as Teva Women's Health, Inc. collectively hereinafter "Teva Women's Health").

13.     Accordingly, Duramed Pharmaceuticals, Inc., a division of Barr Pharmaceuticals, Inc., d/b/a Teva Women's Health Inc., (hereinafter "Duramed"), acquired FEI Women's Health in 2005 wherein the asset of ParaGard IUD was acquired in the deal. Duramed was acquired by Teva USA in 2008 wherein its name was changed to Teva Women's Health, Inc., a wholly-owned subsidiary of Teva USA.

14.     At times relevant hereto and alleged herein, the Defendants conducted and continues to regularly conduct substantial business within the state of Connecticut, which included

3

and continues to include, the research, safety surveillance, manufacture, sale, distribution and marketing of ParaGard IUD, which is distributed through the stream of interstate commerce into the state of Connecticut, and within the District of Connecticut.

15.    At all relevant times, each Defendant acted in all aspects as the agent or alter ego of each other.

16.    Upon reasonable belief, Duramed became Teva Women's Health, Inc., through a name change in 2008. Teva Women's Health, Inc., then became Teva Women's Health, LLC through a conversion in 2017. Teva Women's Health, LLC then sold all of its assets including ParaGard IUD to The Cooper Companies, Inc. and CooperSurgical, Inc. in 2017. Teva Women's Health, LLC is now a *holdings* company with no tangible assets.

17.    The liability of these companies has passed on through various business instruments and now lies with the Defendants.

18.    At times relevant and material hereto, the Defendants engaged in the business of, or were successors-in-interest to entities engaged in the business of, researching, developing, designing, formulating, licensing, manufacturing, testing, producing, processing, assembling, packaging, inspecting, distributing, selling, labeling, monitoring, marketing, promoting, advertising, and/or introducing into interstate commerce throughout the United States, in the state of Connecticut and within the District of Connecticut, either directly or indirectly, through third-parties, subsidiaries and/or related entities, ParaGard IUD, a drug used in the prevention of pregnancy, implanted in patients throughout the United States, including Plaintiff.

19.    At all times alleged herein, the Defendants were engaged in the business of, or were successors-in-interest to entities engaged in the business of, researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale or selling ParaGard IUD.

20.    At all times alleged herein, Defendants were authorized to conduct or engage in business within the state of Connecticut and the District of Connecticut. The Defendants received

financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling and distributing ParaGard IUD within the state of Connecticut and the District of Connecticut.

21.    The combined acts and/or omissions of each Defendant resulted in indivisible injuries to Plaintiff.  Each of the above-named Defendants is a joint tortfeasor and is jointly and severally liable to Plaintiff for the negligent acts and omissions alleged herein.  Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

22.    The amount in controversy exceeds the jurisdictional limits of this court.

IV.    **JURISDICTION AND VENUE**

23.    Plaintiff incorporates by reference all of the above paragraphs.

24.    Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between Plaintiff and Defendants and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

25.    This Court has jurisdiction over the non-resident Defendants because they have conducted business in the state of Connecticut.  Defendants have committed a tort in whole or in part in the state of Connecticut and have regular and continuing contacts with Connecticut.

26.    In addition, venue of this case is proper in the state of Connecticut pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in District of Connecticut.

V.    **FACTUAL ALLEGATIONS**

27.    ParaGard IUD is an intrauterine drug that can provide long term birth control, up to 10 years, without hormones.

28.    ParaGard IUD drug is a T-shaped plastic frame made of polyethylene and barium sulfate that is inserted into the uterus. Copper wire coiled around the IUD produces an inflammatory reaction that is toxic to sperm and egg.  A monofilament polyethylene thread is tied through the tip, resulting in two white threads, which aid in the detection and removal of the drug.

29.    ParaGard IUD has a propensity to break at the arms upon explant resulting in serious injuries.

30.     At relevant times, the Defendants designed, researched, manufactured, labeled, packaged, promoted, marketed and/or sold ParaGard IUD at issue after receiving New Drug Application approval from FDA.

31.     In 2008, Teva USA became the owner of ParaGard IUD when it acquired Duramed Pharmaceuticals, Inc., a division of Barr Pharmaceuticals, Inc., through its purchase of Barr Pharmaceuticals, Inc.

32.     Upon information and belief, when Teva USA acquired Duramed, a division of Barr Pharmaceuticals, Inc., it also acquired Duramed's manufacturing facilities, sales force and responsibility for maintaining and updating the labeling for ParaGard IUD.

33.     Shortly thereafter, Teva USA changed the name of Duramed Pharmaceuticals, Inc., a division of Barr Pharmaceuticals, Inc., to Teva Women's Health, Inc., a wholly owned subsidiary of Teva USA.

34.     On August 31, 2009, Duramed Pharmaceuticals, Inc., filed with the Ohio Secretary of State a Certificate of Amendment to Foreign Corporation Application For License requesting a name change. A new entity was not created, and no entities were dissolved. Duramed's license number did not change. Instead, Duramed changed its name to Teva Women's Health, Inc.

35.     Upon information and belief, Teva Women's Health, Inc. is simply a new name for Duramed.

36.     Upon information and belief, and for purposes of liability and interest, Teva Women's Health, Inc., is the same entity as Teva Women's Health, LLC. Teva Women's Health, Inc., converted into Teva Women's Health, LLC under the laws of Delaware. Del. Code Ann. Tit. 8, 266. Pursuant to Del. Code Ann. Tit. 8, 266, a company that converts from one entity into another is deemed to be a continuation of the preexisting company. A conversion does not equate to a dissolution and no winding up takes place. Therefore, Teva Women's Health, Inc., did not dissolve, windup, or *cease to exist* and liability continues from the corporation to the Limited Liability Company.

37.     Upon information and belief on August 11, 2017, Teva Women's Health, Inc., converted into Teva Women's Heath, LLC and sold off all of its assets.

38.     On September 11, 2017, the Teva Defendants sold ParaGard IUD to The Cooper Companies, Inc. and CooperSurgical, Inc.

39.     ParaGard IUD is currently sold only in the U.S. and had earned revenues of approximately $168 million for the twelve-month period ending June 30, 2017.

40.     The Cooper Companies and CooperSurgical, Inc. still manufacture and sell ParaGard IUD in the U.S.

41.     ParaGard IUD was marketed heavily by the Defendants as being safe and effective, and promising fewer side effects than other birth control methods.

42.     The marketing and promotional efforts of the Defendants, their advertisers, and sales force served to overstate the benefits of ParaGard IUD and minimize and downplay the risks. These promotional efforts were made while the Defendants fraudulently withheld important safety information from health care providers and the public.

43.     Prior to Plaintiff being implanted with ParaGard IUD, the Defendants knew and should have known that the drug was defective and unreasonably dangerous.

44.     The Defendants knew or should have known that ParaGard IUD can and does cause serious harm to individuals who use it, due to the risk of ParaGard IUD's arm breaking upon removal.

45.     The Defendants knew of these risks from the trials they performed, their post-marketing experience and complaints, third party studies, and their own analysis of these studies, but took no action to adequately warn or remedy the defects and instead concealed, suppressed and failed to disclose or fix this danger.

46.     The product warnings for ParaGard IUD were vague, incomplete or otherwise wholly inadequate to alert prescribing physicians and patients to the actual risks associated with ParaGard IUD.

47.     The Defendants' marketing and promotion, through its own website, sought to reassure physicians and patients of the Defendants' longstanding record of quality and safety assurance.

48.     Based upon these representations, upon which Plaintiff and her physician relied, Plaintiff had ParaGard IUD implanted, believing it would be safe and effective, for the entire duration it was implanted and upon removal.

49.     Since 2010, the FDA has received over 1600 reports of ParaGard IUD breakage, with over 700 classified as serious.

50.     The Defendants' failure to adequately communicate and report to the FDA the injuries associated with ParaGard IUD resulted in inadequate warnings.

## VI.    PLAINTIFF'S USE OF PARAGARD IUD

51.     On information and belief, in or about April 2008, Plaintiff was implanted with Defendants' ParaGard IUD by a physician.

52.     Plaintiff, a young and healthy woman, wanted a ParaGard IUD because it was a reversible form of birth control that would allow her to conceive in the future.

53.     On or about March 1, 2018, Plaintiff went to have the ParaGard IUD removed in New Britain, Connecticut.

54.     Plaintiff's healthcare provider attempted to remove the ParaGard IUD as instructed by the Defendants, by grasping the ParaGard IUD by the forceps and pulling gently.  Despite following the instructions provided by the Defendants, only a portion of the ParaGard IUD was retrieved with one arm missing.

55.     On March 6, 2018, Plaintiff's physician removed the ParaGard IUD arm via hysteroscope.

56.     Prior to her procedures, Plaintiff and her doctors were provided with no warning from the Defendants of the risk of ParaGard IUD failure and injury, nor were Plaintiff and her doctors provided with adequate warning of the risk of removal of ParaGard IUD. This information was known or knowable to the Defendants.

57.     On information and belief, Plaintiff used the ParaGard IUD manufactured, packaged, marketed, sold and/or distributed by the Defendants.  The ParaGard IUD reached Plaintiff without substantial change in the drug's condition.

58.     On information and belief, as a direct and proximate result of using ParaGard IUD, Plaintiff developed serious and/or permanent adverse effects.

59.     As a result of said injuries, Plaintiff suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity, and have and will incur past and future medical expenses.

60.     At all relevant times, the Defendants had knowledge that there was a significant increased risk of adverse events associated with ParaGard IUD including arm breakage, and despite this knowledge the Defendants continued to manufacture, market, distribute, sell, and profit from sales of ParaGard IUD.

61.     Despite such knowledge, the Defendants knowingly, purposely, and deliberately failed to adequately warn Plaintiff, patients, consumers, medical providers, and the public of the increased risk of serious injury associated with using ParaGard IUD.

62.     Defendants failed to adequately and fully research, investigate, test, study and define the safety profile of ParaGard IUD, thereby rendering ParaGard IUD unreasonably dangerous and unsafe for its intended use.

63.     On information and belief, Plaintiff's prescribing physicians would not have prescribed ParaGard IUD to Plaintiff, would have changed the way they warned Plaintiff about the signs and symptoms of serious adverse effects of ParaGard IUD, and discussed with Plaintiff the true risks of arm breakage and resulting injuries and complications had the Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of ParaGard IUD.

64.     As a direct and proximate result of the Defendants' conduct, Plaintiff suffered injuries, including, but not limited to, pain, suffering and loss of reproductive health, which resulted in damages to Plaintiff in a sum in excess of the jurisdictional limits of the Court.

65.     The Defendants maintained a duty to Plaintiff after the ParaGard IUD was implanted and until it was removed.

66.     As a direct result of Plaintiff's use of ParaGard IUD, Plaintiff suffered from having a broken arm of the ParaGard IUD in her, causing her damage, including but not limited to pain, suffering, mental anguish, the loss of reproductive health, loss of enjoyment of life, medical expenses and other out of pocket losses and loss of income.

## VII.  DELAYED DISCOVERY

67.     Plaintiff incorporates by reference the factual portion of this Complaint as if fully set forth herein and additionally, or in the alternative, if same be necessary, allege as follows:

68.     Plaintiff plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that the Plaintiff had been injured, the cause of the injury and the tortuous nature of the wrongdoing that caused the injury.

69.     Despite diligent investigation by Plaintiff into the cause of her injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages and their relation to the Plaintiff's ParaGard IUD and Defendants' wrongful conduct was not discovered and could not have been discovered, until a date within the applicable statute of limitations for filing each of Plaintiff's claims.  Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

70.     Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by the Defendants when they had a duty to disclose those facts.  The Defendants' purposeful and fraudulent acts of concealment have kept Plaintiff ignorant of vital information essential to the pursuit of Plaintiff's claims, without any fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on Plaintiff's filing of their causes of action. The Defendants' fraudulent concealment did result in such delay.

71.     Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of their ParaGard IUD.

## VIII.  CAUSES OF ACTION

### COUNT I – NEGLIGENCE
### C.G.S.A. § 52-572 *et seq.*

72.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

73.     At times relevant, the Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling and/or distributing ParaGard IUD, including the one that was implanted into the Plaintiff.

74.     The Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, safety surveillance and distribution of ParaGard IUD so as to avoid exposing others to foreseeable and unreasonable risks of harm.

75.     The Defendants breached their duty of care to the Plaintiff and her physicians, in the manufacture, design, labeling, warnings, instructions, sale, marketing, safety surveillance, and distribution of ParaGard IUD.

76.     The Defendants had a duty to adequately and fully research, investigate, test, study and define the safety profile of ParaGard IUD, thereby rendering ParaGard IUD unreasonably dangerous and unsafe for its intended use;

77.     The Defendants breached that duty by failing to adequately and fully research, investigate, test, study and define the safety profile of ParaGard IUD, thereby rendering ParaGard IUD unreasonably dangerous and unsafe for its intended use;

78.     The Defendants knew that ParaGard IUD could break upon removal and failed to warn Plaintiff of this potential injury.

79.     The Defendants had a duty to warn Plaintiff of the potential for breakage at the arm(s) upon removal. The Defendants breached that duty and Plaintiff was harmed.

80.     The Defendants knew or reasonably should have known that ParaGard IUD was dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

81.     At the time of the manufacture and sale of ParaGard IUD, the Defendants knew or should have known that ParaGard IUD was designed and manufactured in such a manner so as to present an unreasonable risk of the fracture of the arm of the drug upon removal.

82.     At the time of the manufacturer and sale of ParaGard IUD, the Defendants knew or should have known that ParaGard IUD was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement and subsequent removal.

83.     At the time of the manufacture and sale of ParaGard IUD, the Defendants knew or should have known that using ParaGard IUD for its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe injuries, including but not limited to additional surgeries and/or medical procedures in order to remove the fragmented drug, even leading to hysterectomy.

84.     The Defendants knew or reasonably should have known that the consumers of ParaGard IUD would not realize the danger associated with using the drug for its intended use and/or in a reasonably foreseeable manner.

85.     The Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of ParaGard IUD in, among others, the following ways:

a.     Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking measures to reduce or avoid harm;

b.     Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product

exceeded the likelihood of potential harm from other drug available for the same purpose;

c.   Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications;

d.   Failing to use reasonable care to warn or instruct Plaintiff, Plaintiff's healthcare providers or the general health care community about ParaGard IUD's substantially dangerous condition or about facts making the product likely to be dangerous, including pre-and post-sale;

e.   Failing to perform reasonable pre-and post-market testing of ParaGard IUD to determine whether or not the product was safe for its intended use;

f.   Failing to provide adequate instructions, guidelines, and safety precautions, to those persons to whom it was reasonably foreseeable would recommend, use, implant and remove ParaGard IUD;

g.   Advertising, marketing and recommending the use of ParaGard IUD, while concealing and failing to disclose or warn of the dangers known by the Defendants to be connected with and inherent in the use of ParaGard IUD;

h.   Representing that ParaGard IUD was safe for its intended use when in fact, the Defendants knew and should have known the product was not safe for its intended purpose;

i.   Continuing manufacture and sale of ParaGard IUD with the knowledge that the IUD was dangerous and not reasonably safe, and failing to comply with the FDA good manufacturing regulations;

j.   Failing to use reasonable and prudent care in the design, research, manufacture, and development of ParaGard IUD so as to avoid the risk of serious harm associated with the use of the IUD;

k.   Failing to establish an adequate quality assurance program used in the manufacturing of ParaGard IUD;

l.   Failing to establish and maintain an adequate post-marketing surveillance program for ParaGard IUD;

m.   Failing to adequately and correctly report safety information relative to ParaGard IUD product resulting in inadequate warnings; and

n.   Failing to provide adequate and continuous warnings about the inherent danger of breakage with ParaGard IUD upon removal.

86.   A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

87.   As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of ParaGard IUD, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II – STRICT LIABILITY DESIGN DEFECT
## C.G.S.A. § 52-572 *et seq.*

88.   Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

89.   ParaGard IUD is inherently dangerous and defective, unfit and unsafe for its intended use and reasonably foreseeable uses and does not meet or perform to the expectations of patients and their health care providers.

90.   ParaGard IUD was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left the Defendants' possession.

91.     The ParaGard IUD implanted in Plaintiff was defective in design because it failed to perform as safely as persons who ordinarily use the products would have expected at time of use.

92.     The ParaGard IUD implanted in Plaintiff was defective in design, in that the IUD's risks of harm exceeded its claimed benefits.

93.     Plaintiff and her healthcare providers used ParaGard IUD in a manner that was reasonably foreseeable to the Defendants.

94.     Neither Plaintiff nor her healthcare providers could have by the exercise of reasonable care discovered the IUD's defective conditions or perceived its unreasonable dangers prior to her implantation of the drug.

95.      As a result of the foregoing design defects, ParaGard IUD created risks to the health and safety of its users that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of ParaGard IUD.

96.     The Defendants have intentionally and recklessly designed ParaGard IUD with wanton and willful disregard for the rights and health of the Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

97.     As a proximate result of the Defendants' design of ParaGard IUD, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT III – STRICT LIABILITY MANUFACTURING DEFECT
## C.G.S.A. § 52-572 *et seq.*

15

98.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

99.     The Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, performed pharmacovigilance, distributed and sold the ParaGard IUD that was implanted into the Plaintiff.

100.    The ParaGard IUD implanted in Plaintiff contained a condition or conditions, which the Defendants did not intend, at the time the ParaGard IUD left the Defendants' control and possession.

101.    Plaintiff and Plaintiffs' health care providers used the drug in a manner consistent with and reasonably foreseeable to the Defendants.

102.    As a result of this condition or these conditions, the product failed to perform as safely as the ordinary consumer would expect, causing injury, when used in a reasonably foreseeable manner.

103.    ParaGard IUD was defectively and/or improperly manufactured, rendering it defective and unreasonably dangerous and hazardous to Plaintiff.

104.    As a result of the manufacturing defects, ParaGard IUD creates risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of ParaGard IUD.

105.    The Defendants intentionally and recklessly manufactured ParaGard IUD with wanton and willful disregard for the rights and health of the Plaintiffs and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

106.    As a proximate result of the Defendants manufacture of ParaGard IUD, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in

excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT IV – STRICT LIABILITY FAILURE TO WARN
## C.G.S.A. § 52-572q

107.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

108.     The Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold ParaGard IUD, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the drug to consumers or persons responsible for consumers.

109.     At the time the Defendants designed set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold ParaGard IUD into the stream of commerce, they knew or should have known that the drug presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

110.     Specifically, the Defendants knew or should have known that ParaGard IUD posed a significant risk that one of the arms of the drug could break upon removal, resulting in significant injuries.

111.     The Defendants had a duty to warn of the risk of harm associated with the use of the drug and to provide adequate warnings concerning the risk the drug could break upon removal, even if implanted properly and even if the drug remained properly in-place.

112.     The Defendants failed to properly and adequately warn and instruct the Plaintiff and her health care providers with regard to the inadequate research and testing of ParaGard IUD, and the complete lack of a safe, effective procedure for removal of ParaGard IUD.

113.     The risks associated with ParaGard IUD are of such a nature that health care providers and users could not have recognized the potential harm.

114.     ParaGard IUD was defective and unreasonably dangerous at the time of its release into the stream of commerce due to the inadequate warnings, labeling and/or instructions

accompanying the product, including but not limited to, the implantation and subsequent removal of ParaGard IUD.

115. The ParaGard IUD, when implanted in Plaintiff, was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by the Defendants.

116. The Defendants intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits in order to advance their own financial interests, with wanton and willful disregard for the rights and health of the Plaintiff.

117. As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of ParaGard IUD, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT V – COMMON LAW FRAUD
### C.G.S.A. § 52-572 *et seq.*

118. Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

119. The Defendants falsely and fraudulently represented and continue to represent to the medical and healthcare community, Plaintiff and her physicians, and/or the public that ParaGard IUD had been appropriately tested and was found to be safe and effective.

120. The representations made by the Defendants were, in fact, false. When the Defendants made their representations, they knew and/or had reason to know that those representations were false, and they willfully, wantonly, and recklessly disregarded the inaccuracies in their representations and the dangers and health risks to users of ParaGard IUD.

18

121.    These representations were made by the Defendants with the intent of defrauding and deceiving the medical community, Plaintiff, and the public, and also inducing the medical community, Plaintiff, Plaintiff's physicians, and/or the public, to recommend, prescribe, dispense, and purchase ParaGard IUD for use as a form of long-term birth control, all of which evidenced a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff.

122.    In representations to Plaintiff and/or to her healthcare providers, the Defendants fraudulently concealed and intentionally omitted the following material information:

    a.    That ParaGard IUD was not as safe as other products and procedures available to aid in the long-term prevention of pregnancy;

    b.    That the risk of adverse events with ParaGard IUD was higher than with other products and procedures available for birth control;

    c.    ParaGard IUD was not adequately tested;

    d.    That the limited clinical testing for ParaGard IUD revealed a higher risk of adverse events, above and beyond those associated with other products and procedures available for birth control;

    e.    That the Defendants knowingly failed, neglected and/or refused to follow up on the adverse results from clinical studies and/or formal and informal reports from physicians and/or other healthcare providers and either ignored, concealed and/or misrepresented those findings;

    f.    That the Defendants were aware of dangers in ParaGard IUD in addition to and above and beyond those associated with other products and procedures available for birth control;

    g.    That ParaGard IUD was defective, and that it caused dangerous and adverse side effects, including but not limited to unacceptable incidence of breakage upon removal;

    h.    That when ParaGard IUD needed to be removed, the removal procedure had a very high failure rate and/or needed to be performed repeatedly;

        i.   That ParaGard IUD was manufactured negligently;

        j.   That ParaGard IUD was manufactured defectively; and

        k.   That ParaGard IUD was designed negligently and designed defectively.

123.   The Defendants were under a duty to disclose to Plaintiff and her physicians, the defective nature of ParaGard IUD, including but not limited to, the risk of breakage prior to and upon removal, which could result in permanent injury.

124.   The Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used ParaGard IUD, such as Plaintiff.

125.   The Defendants' concealment and omissions of material facts concerning the safety of ParaGard IUD were made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, Plaintiff's physicians, surgeons and healthcare providers and to induce them to purchase, prescribe, and/or dispense ParaGard IUD; and/or to mislead them into reliance upon and cause them to use ParaGard IUD.

126.   At the time these representations were made by the Defendants, and at the time Plaintiff and/or her physicians, used ParaGard IUD, Plaintiff and/or her physicians were unaware of the falsehood of these representations, and reasonably believed them to be true.

127.   The Defendants knew and had reason to know that ParaGard IUD could and would cause severe and grievous personal injury to the users of the product and was inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

128.   In reliance upon these false representations, Plaintiff and her physicians were induced to, and did use ParaGard IUD, thereby causing severe and permanent personal injuries and damages to Plaintiff. The Defendants knew or had reason to know that the Plaintiff and her physicians and other healthcare providers had no way to determine the truth behind the Defendants' concealment and omissions, and that these included material omissions of facts surrounding the use of ParaGard IUD, as described in detail herein.

129.    Plaintiff and her physicians reasonably relied on facts provided by the Defendants which foreseeably and purposefully suppressed and concealed facts that were critical to understanding the real dangers inherent to the use of ParaGard IUD.

130.    Having knowledge based on their research and testing, or lack thereof, the Defendants blatantly and intentionally distributed false information, including but not limited to assurances to Plaintiff, the public, and Plaintiff's healthcare providers and physicians, that ParaGard IUD was safe for use as a means of providing long-term birth control and was as safe or safer than other product and/or procedures available and/or on the market. As a result of the Defendants' research and testing, or lack thereof, the Defendants intentionally omitted, concealed and suppressed the dissemination of certain results of testing and research to healthcare professionals, Plaintiff, her physicians, and the public at large.

131.    The Defendants had a duty when disseminating information to the public to disseminate truthful information; and a parallel duty not to deceive the public, Plaintiff, and/or her physicians.

132.    The information distributed to the public, the medical community, Plaintiff and her physicians by the Defendants included, but was not limited to websites, information presented at medical and professional meetings, information disseminated by sales representatives to physicians and other medical care providers, professional literature, reports, press releases, advertising campaigns, television commercials, print advertisements, and/or other commercial media, and contained material representations which were false and misleading, as well as omissions and concealments of the truth about the dangers of the use of ParaGard IUD.

133.    These representations, and others made by the Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts.

134.    The Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of ParaGard IUD to Plaintiff, her

physicians and the public at large, for the purpose of influencing the sales of products known to be dangerous and defective, and/or not as safe as other alternatives.

135.    At the time the representations were made, Plaintiff and her healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of ParaGard IUD.

136.    Plaintiff did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiff discover the false representations of the Defendants, nor would Plaintiff with reasonable diligence have discovered the true facts about the Defendants' misrepresentations at the time when the ParaGard IUD was surgically implanted into her.

137.    Had Plaintiff known the true facts about the dangers and serious health and/or safety risks of ParaGard IUD, neither Plaintiff nor her physician would not have purchased, used, or relied on the Defendants' representations and omissions concerning ParaGard IUD.

138.    As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of ParaGard IUD, Plaintiff has been seriously injured, and sustained severe and permanent injury, pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT VI – NEGLIGENT MISREPRESENTATION
### C.G.S.A. § 52-572 *et seq.*

139.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

140.    At relevant times, the Defendants negligently provided Plaintiff, her healthcare providers, and the general medical community with false or incorrect information or omitted or

failed to disclose material information concerning ParaGard IUD, including, but not limited to, misrepresentations regarding the safety of ParaGard IUD.

141.    The information distributed by the Defendants to the public, the medical community, the Plaintiff and her healthcare providers, including advertising campaigns, labeling materials, print advertisements, commercial media, was false and misleading and contained omissions and concealment of truth about the dangers of ParaGard IUD.

142.    The Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiff and Plaintiffs' health care providers; to falsely assure them of the quality of ParaGard IUD and the induce the public and medical community, including Plaintiff and her healthcare provider to request, recommend, prescribe, implant, purchase and continue to use ParaGard IUD.

143.    The Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, medical drug manufacturers, Plaintiff, her healthcare providers and the public, that ParaGard IUD had been tested and found to be safe and effective for long term birth control.

144.    The representations made by the Defendants were, in fact, false. ParaGard IUD was not safe for human use in its intended and reasonably foreseeable manner.  Use of ParaGard IUD is dangerous as there is a risk that it may fracture upon removal causing significant injury.

145.    In reliance upon the false and negligent misrepresentations and omissions made by the Defendants, Plaintiff and Plaintiff's healthcare providers were induced to, and did use ParaGard IUD, thereby causing Plaintiff to endure severe and permanent injuries.

146.    The Defendants knew and had reason to know that the Plaintiff, Plaintiff's healthcare providers, and the general medical community did not have the ability to determine the true facts which were intentionally and/or negligently concealed and misrepresented by the Defendants.

147.    Plaintiff and her healthcare providers would not have recommended, and implanted ParaGard IUD had the true facts not been concealed by the Defendants.

148.   The Defendants had sole access to the material facts concerning the defective nature of ParaGard IUD and its propensity to cause serious and dangerous side injuries.

149.   At the time the Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff was implanted with ParaGard IUD, Plaintiff and her healthcare providers were unaware of the Defendants' negligent misrepresentations and omissions.

150.   The Defendants failed to exercise ordinary care in making representations concerning ParaGard IUD while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because they negligently misrepresented ParaGard IUD's high risk of unreasonable and dangerous adverse side effects.

151.   The Defendants breached their duty to Plaintiff, her physicians, and the medical and healthcare community, by representing that ParaGard IUD has no serious side effects different from older generations of similar products or procedures.

152.   Plaintiff and Plaintiff's healthcare providers reasonably relied upon the misrepresentations and omissions made by the Defendants, where they concealed and misrepresented facts that were critical to understanding the true dangers inherent in the use of ParaGard IUD.

153.   Plaintiff and Plaintiff's healthcare providers' reliance on the foregoing misrepresentations and omissions was the direct and proximate cause of Plaintiffs injuries.

154.   The Defendants knew, and had reason to know, that ParaGard IUD had been insufficiently tested, or had not been tested at all, that the products lacked adequate and accurate warnings, that they created a high risk, and/or higher than acceptable risk, and/or higher than reported risk that they represented a risk of adverse side effects, including, pain and suffering, surgery to remove the product, and other severe and personal injuries, which are permanent and lasting in nature.

155.   As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of ParaGard IUD, Plaintiff has been injured catastrophically, and sustained

severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

**COUNT VII – BREACH OF EXPRESS WARRANTY**
**C.G.S.A. § 52-572 *et seq*.**

156.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

157.    At relevant times, the Defendants intended that ParaGard IUD be used in the manner that Plaintiff used it and the Defendants expressly warranted that each product was safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other treatments for long-term birth control, and that they were adequately tested and fit for their intended use.

158.    At relevant times, the Defendants were aware that consumers, including Plaintiff, would use ParaGard IUD; which is to say that Plaintiff was a foreseeable user of ParaGard IUD.

159.    Plaintiff and/or her implanting physicians were, at all relevant times, in privity with the Defendants.

160.    ParaGard IUD was expected to reach and did in fact reach its ultimate consumer, including Plaintiff and her implanting physicians, without substantial change in the condition in which it was manufactured and sold by the Defendants.

161.    The Defendants breached various express warranties with respect to ParaGard IUD including the following particulars:

        a.    The Defendants represented to Plaintiff and her physicians and healthcare providers through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory

submissions that ParaGard IUD was safe, and fraudulently withheld and concealed information about the substantial risks of serious injury associated with using ParaGard IUD;

b. The Defendants represented to Plaintiff and her physicians and healthcare providers that ParaGard IUD was as safe, and/or safer than other alternative procedures and drugs and fraudulently concealed information, which demonstrated that ParaGard IUD was not safer than alternatives available on the market; and

c. The Defendants represented to Plaintiff and her physicians and healthcare providers that ParaGard IUD was more efficacious than other alternatives and fraudulently concealed information regarding the true efficacy of the products.

162. In reliance upon the Defendants' express warranties, Plaintiff was implanted with ParaGard IUD as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by the Defendants.

163. At the time of making such express warranties, the Defendants knew or should have known that ParaGard IUD does not conform to these express representations because ParaGard IUD was not safe and had numerous side effects, many of which the Defendants did not accurately warn about, thus making ParaGard IUD unreasonably unsafe for its intended purpose.

164. Members of the medical community, including physicians and other healthcare professionals, as well as Plaintiff and her physicians, relied upon the representations and warranties of the Defendants in connection with use, recommendation, description, and/or dispensing of ParaGard IUD.

165. The Defendants breached their express warranties to Plaintiff in that ParaGard IUD was not of merchantable quality, safe and/or fit for its intended uses, nor was it adequately tested.

166. As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of ParaGard IUD, Plaintiff has been injured catastrophically, and sustained

severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT VIII – BREACH OF IMPLIED WARRANTY

167.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

168.    At relevant and material times, the Defendants manufactured, distributed, advertised, promoted, and sold ParaGard IUD.

169.    At relevant times, the Defendants intended that ParaGard IUD be implanted for the purposes, and in the manner, that Plaintiff or her physicians or surgeons used it and the Defendants impliedly warranted each ParaGard IUD to be of merchantable quality, safe and fit for such use, and to have been adequately tested.

170.    The Defendants were aware that consumers, including Plaintiff or her physicians or surgeons would implant ParaGard IUD in the manner described by the instructions for use and that Plaintiff was the foreseeable user of ParaGard IUD.

171.    Plaintiff and/or her physicians and surgeons were at all relevant times in privity with the Defendants.

172.    The Defendants' ParaGard IUD was expected to reach and did in fact reach consumers, including Plaintiff and/or her physicians and surgeons, without substantial change in the condition in which they manufactured and sold by the Defendants.

173.    The Defendants breached various implied warranties with respect to ParaGard IUD, including the following particulars:

        a.  The Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters,

medical literature, and regulatory submissions that ParaGard IUD was safe and fraudulently withheld and concealed information about the substantial risks of serious injury associated with using ParaGard IUD;

b.  The Defendants represented that ParaGard IUD was safe, and/or safer than other alternative drugs or procedures and fraudulently concealed information, which demonstrated that ParaGard IUD was not as safe or safer than alternatives available on the market; and

c.  The Defendants represented that ParaGard IUD was more efficacious than other alternative treatments and fraudulently concealed information, regarding the true efficacy of ParaGard IUD.

174.   In reliance upon the Defendants' implied warranties, Plaintiff and/or her implanting physicians and surgeons used ParaGard IUD as prescribed in the foreseeable manner normally intended, recommended, promoted, and marketed by the Defendants.

175.   The Defendants breached their implied warranties to Plaintiff and/or her implanting physicians and surgeons in that ParaGard IUD was not of merchantable quality, safe and fit for its intended use, or adequately tested, in violation of common law principles.

176.   As a proximate result of the Defendants' design, manufacture, marketing, sale and/or distribution of ParaGard IUD, Plaintiff has been injured catastrophically, and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of reproductive health, comfort, and economic damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT IX – GROSS NEGLIGENCE
## C.G.S.A. § 52-572 *et seq.*

177.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

178.    The wrongs done by the Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, for which the law would allow, and which Plaintiff  will seek at the appropriate time under governing law for the imposition of exemplary damages, in that the Defendants' conduct was specifically intended to cause substantial injury to Plaintiff; or when viewed objectively from the Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and the Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with the Defendants, knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff.

179.    Plaintiff and her physicians relied on the representations of the Defendants and suffered injury as a proximate result of this reliance.

180.    Plaintiff therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

181.    Plaintiff also alleges that the acts and omissions of the Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused that injuries to Plaintiff.  In that regard, Plaintiff will seek exemplary damages in an amount that would punish the Defendants for their conduct and which would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in

excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## <u>COUNT X – PUNITIVE DAMAGES</u>
## <u>C.G.S.A. § 52-240b</u>

182.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

183.    At times material hereto, the Defendants knew or should have known that their ParaGard IUD, as designed, manufactured, assembled, sold and/or distributed was inherently dangerous.

184.    At times material hereto, the Defendants attempted to misrepresent and did misrepresent facts concerning the safety of their ParaGard IUD.

185.    The Defendants' misrepresentations included knowingly withholding material information from the public and consumers alike, including Plaintiff, concerning the safety of ParaGard IUD.

186.    At times material hereto, the Defendants knew and recklessly disregarded the fact that their ParaGard IUD could cause serious, disabling, and permanent injuries to individuals such as Plaintiff.

187.    Notwithstanding the foregoing, the Defendants continued to aggressively market and promote their ParaGard IUD, without disclosing the risks.

188.    As a proximate result of the Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the rights and safety of their consumers, Plaintiff suffered severe and permanent physical and emotional injuries, endured pain and suffering, and has suffered economic loss, including incurring significant expenses for medical care and treatment, and will continue to incur such expenses in the future.

189.    The Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the rights and safety of

consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

### **PRAYER FOR RELIEF**

So far as the law and this Court allows, Plaintiff demands judgment against each Defendant on each count as follows:

      a.    All available compensatory damages for the described losses with respect to each cause of action;

      b.    Past and future medical expenses, as well as the cost associated with past and future life care;

      c.    Past and future lost wages and loss of earning capacity;

      d.    Past and future emotional distress;

      e.    Consequential damages;

      f.    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

      g.    Punitive damages with respect to each cause of action;

      h.    Reasonable attorneys' fees where recoverable;

      i.    Costs of this action;

      j.    Pre-judgment and all other interest recoverable; and

      k.    Such other additional, further, and general relief as Plaintiff may be entitled to in law or in equity as justice so requires.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues.

Dated February 26, 2021.

/s/ Neal L. Moskow
Neal L. Moskow
CT Federal No. ct04516
Ury & Moskow, LLC
neal@urymoskow.com
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:203-610-6393
Facsimile: 203-610-6399
***Attorney for Plaintiff***